IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MEDTRONIC AVE, INC., | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2-03-CV-212 (TJW) |
| | § | |
| CORDIS CORP., | § | |
|    Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

After considering the submissions and the arguments of counsel, the Court issues the following order concerning the claim construction issues:

**I.    Introduction**

Plaintiff Medtronic AVE, Inc. accuses Defendant Cordis Corporation of infringing United States Patent Nos. 6,190,358 ("the '358 patent") entitled "Reinforced Rapid Exchange Balloon Catheter" and 6,605,057 ("the '057 patent") entitled "Reinforced Monorail Balloon Catheter." The plaintiff has asserted claims 1-6 of the '358 patent and all the claims of the '057 patent against the defendant.

**II.    Background of the Technology**

The '358 patent and the '057 patent describe a new design for a balloon dilation catheter. A balloon dilation catheter is commonly used in angioplasty procedures which are performed to treat coronary artery disease. Angioplasty involves the insertion of a balloon dilation catheter into a patient. A guide wire, a flexible and thin wire, is first used to locate the obstructed artery. The balloon catheter with a guide wire lumen, a lengthwise passageway, is pushed over the guide wire and positioned in the appropriate location. The balloon at the end of the catheter is then inflated which pushes the plaque against the artery wall. This opens the blockage and increases the blood

flow through the artery.

In general, the new design described in the patents involves two inventive aspects - 1) reducing the amount of blood that enters the guide wire lumen, and 2) improving the way a stiffening wire is attached to the inside of the catheter.[1]

### III. General Principles Governing Claim Construction

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. Under the patent law, the specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. A patent's claims must be read in view of the specification, of which they are a part. *Id*. For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id*. "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's claims. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec.*

---

[1] The claims involving specific methods for attaching a stiffening wire to a catheter are not being asserted in this case.

*Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). And, although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d at 1312 (emphasis added) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id*. The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id*. at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention. The patent is addressed to and intended to be read by others skilled in the particular art. *Id*.

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."

3

*Id*. Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id*. at 1315 (*quoting Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims. *Id*. at 1314-17. As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. The prosecution history helps to demonstrate how the inventor and the PTO understood the patent. *Phillips*, 415 F.3d at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id*. Nevertheless, the prosecution history is intrinsic evidence. That evidence is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims.

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Id*. at 1319-24. The approach suggested by *Texas Digital*–the assignment of a limited role to the specification–was rejected as inconsistent with decisions holding the specification to be the best guide to the meaning of a disputed term. *Id*. at 1320-21. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of the claim terms within the context of the patent." *Id*. at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.* What is described in the claims flows from the statutory requirement imposed on the patentee to describe and particularly claim what he or she has invented. *Id*. The definitions found in dictionaries, however, often flow from the editors' objective of assembling all of the possible definitions for a word. *Id*. at 1321-22.

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id*. at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant. The court now turns to a discussion of

the disputed claim terms.

**IV.     Terms in Dispute**

Claims 1 and 5 of the '358 patent are representative of how the terms in dispute are used in the asserted claims.  Claim 1 is an independent apparatus claim.  It provides:

> A dilation catheter, comprising:
> an elongated catheter shaft having an outer wall and inner wall, the inner wall surrounding a central lumen,
> a guide wire tube having a distal portion of a first length, a proximal portion of a second length longer than the first length, an outer surface and an inner surface, wherein the guide wire tube extends through at least a distal portion of the catheter shaft, with a fluid channel between the outer surface of the guide wire tube and the inner wall of the catheter shaft, wherein the inner surface of the guide wire tube forms a lumen for receiving a guide wire the lumen having a first diameter for the distal portion of the guide wire tube and a second diameter larger than the first diameter for the proximal portion of the guide wire tube,
> a balloon having a distal end and a proximal end, the proximal end being attached to the distal portion of the catheter shaft, and the distal end being attached to the distal portion of the guide wire tube, the fluid channel serving as an inflation/deflation lumen for the balloon, wherein
>> the first length of the distal portion of the guide wire tube and the first diameter for the distal portion of the guide wire tube being selected such that when a guide wire is within the guide wire lumen, blood is substantially prevented from entering the proximal portion of the guide wire lumen and a less viscous anticoagulant in the proximal portion of the guide wire lumen is allowed to coat the surface of the guide wire within the distal portion of the guide wire lumen.

Claim 5 is a dependent apparatus claim.  It provides:

> The dilation catheter as in claim 1 further comprising a stiffening wire positioned within the catheter shaft.

**A.     Agreed Constructions**

The parties have stipulated to the construction of the following terms in the claims:

"Distal" means "farther from a catheter operator."

"Proximal" means "closer to a catheter operator."

**B.     Disputed Constructions**

**1. "guide wire tube" or "guide wire tube"[2]**

The parties appear to agree that the outer diameter of the guide wire tube "tapers." The dispute is whether the inner diameter of the guide wire tube also "tapers." The plaintiff argues that the guide wire tube must be tapered because that is the sole embodiment of the invention. '358 patent, Fig. 7, 2:48-49, 3:21-22, 3:66-67. According to the plaintiff, if the internal diameter of the guide wire tube did not "taper," then a guide wire tube with a tapered external diameter and abrupt, right-angle internal stepped transitions would be covered by the claims. The plaintiff argues that this cannot be covered by the claims because it was never disclosed.

The defendant argues that other claim language deals with the fact that the proximal and distal portions have different internal diameters and that using "tapering" would render that language superfluous. The defendant also argues that the patent specification does not teach any benefit to "tapering" the inner diameter and does not discuss any detriment from more abrupt transitions. According to the defendant, there is no requirement that the inner diameter mirror the outer diameter.

The Court is persuaded that the inner diameter of the guide wire tube "tapers." The specification states that the outer diameter of the guide wire tube is "also reduced or tapered." '358 patent, 2:60-61. This implies that the inner diameter discussed previously is "reduced or tapered." *See* '358 patent, 2:45-59. Furthermore, one of ordinary skill in the art would not read the patent to include a guide wire tube with an inner diameter that is geometrically different from the outer diameter. Accordingly, "guide wire tube" means "a tube for passage of a guide wire with an inner

---

[2] The claims in the '358 patent uses the term "guide wire", while the claims in the '057 patent uses the term "guidewire." The parties agree that "guide wire" and "guidewire" are identical. For claim construction purposes, "guide wire" will be used as reference to both terms.

and outer diameter that tapers between a proximal and a distal portion."

### 2. "distal portion of a first length"

The plaintiff proposes "the distal extremity of the guide wire tube in which the inner diameter is decreased in size for a short distance" whereas the defendant contends that no construction is needed. There are two main disputes - 1) whether to include an inner diameter limitation and 2) whether the phrase should be limited to the "distal extremity" covering a "short distance."

The plaintiff argues that its proposed construction meets the four criteria established in *SciMed Life Systems, Inc v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337 (Fed. Cir. 2001), for construing claims by reference to the single embodiment disclosed in the specification. First, the abstract states that the guide wire tube must have a decreased inner diameter at the distal extremity. Second, the decreased diameter in the distal extremity distinguishes the invention over prior art because it combines several benefits inherent in the invention, e.g., reduced blood in the guide wire lumen, free movement of the catheter relative to the guide wire, etc. Third, the specification states that "the invention" includes a distal extremity of the guide wire tube decreased in size for a short distance. '358 patent, 2:48-49, 6:11-13. Fourth, the patent discloses this feature as the single embodiment because the specification states that it is applicable to all balloon catheters with guide wire lumens. '358 patent, 1:54-56, 2:42-45, 6:22-25.

The defendant argues that this phrase does not mention the inner diameter, and that the inner diameter is actually discussed in later claim language. According to the defendant, adding the inner diameter limitation would result in an impermissible reading of a limitation into claim terms.

The defendant also argues that adding the "short distance" limitation is incorrect for four reasons. First, the defendant contends that the claim already defines the relative length of the distal

portion - "a distal portion of a first length and a proximal portion of a second length longer than the first length." According to the defendant, this does not mean that the distal portion extends only for a "short distance," but only that the proximal portion is longer than the distal portion.

Second, the defendant contends that the specification does not compel a "shortness" limitation. The defendant argues that this aspect is just one embodiment and the limiting language ("all embodiments of the present invention") in the *SciMed* case is not present in the specifications of the patents. The defendant also contends that *SciMed* does not apply because the specifications do not provide a way to determine what constitutes a "short distance," and, therefore, it cannot be a limitation necessary to distinguish prior art.

Third, the defendant contends that the prosecution history counsels against adding a "shortness" limitation. The defendant points out that when the examiner rejected the original claims because they did not specify the length of the guide wire lumen's distal portion, the applicants amended their claims to state that the proximal portion was longer than the distal portion. According to the defendant, if the applicants wanted to limit the length of the distal portion to a "short distance," then they would have done it in their amended claims.

Fourth, the defendant contends that "short" is an ambiguous word and would not aid in construing the meaning of the term.

The Court agrees with the defendant that the inner diameter size and the "short distance" limitation should not be included in the construction of this phrase. The inner diameter size is already discussed in a subsequent part of the claim. The language in Claim 1 states that the inner surface of the guide wire lumen has "a first diameter for the distal portion of the guide wire tube and a second diameter larger than the first diameter for the proximal portion of the guide wire tube."

'358 patent, 7:18-22.

In addition, "short distance" is an ambiguous term. Subsequent claim language specifies the limitations for selecting the length of the distal portion (e.g., it must substantially prevent blood from entering the proximal portion, etc.). *See* '358 patent, 7:28-38. The Court rejects the plaintiff's argument that, in this case, *SciMed* requires a construction limited to the specification. In *SciMed* and the other cases cited by the plaintiff, the court limited the scope of the asserted claims to the structures described as distinguishing, or improving upon, prior art. *See SciMed*, 242 F.3d at 1342-43; *Honeywell Int'l, Inc. v. ITT Industries, Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006); *On Demand Machine Corp. v. Ingram Industries, Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006); *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1356 (Fed. Cir. 2006). Here, the patents-in-suit do not distinguish the prior art solely on the basis of having an inner diameter decreased for a "short distance." The Court also notes that the abstract does not identify the inner diameter of the distal portion of the guide wire as being decreased for a "short distance." *Cf. SciMed*, 242 F.3d at 1342 (stating that the limitation was identified from the outset of the specification, in the abstract section). Accordingly, the Court concludes that this term requires no further construction.

### 3.  "proximal portion of a second length longer than the first length"

The plaintiff proposes "a proximal section of the guide wire tube that is longer and has a larger inner diameter than the distal portion." To support its proposed construction, the plaintiff makes a similar *SciMed* argument as for the previous phrase. The defendant, on the other hand, argues that this construction impermissibly adds limitations that are already specified elsewhere in the claim.

The Court agrees with the defendant that the plaintiff's proposed construction adds

limitations that are already specified elsewhere in the claim. Therefore, no further construction is needed.

> **4.     "wherein the first length of the distal portion of the guide wire tube and the first diameter for the distal portion of the guide wire tube being selected such that when a guide wire is within the guide wire lumen, blood is substantially prevented from entering the proximal portion of the guide wire lumen and a less viscous anticoagulation in the proximal portion of the guide wire lumen is allowed to coat the surface of the guide wire within the distal portion of the guide wire lumen"**

The Court first turns to a preliminary dispute as to whether the language after "wherein" consists of claim limitations or whether it simply states the results of other structural limitations. A "wherein" clause may raise a question as to the limiting effect of the language in the claim. *See* Manual of Patent Examining Procedure § 2111.04 (8th ed., 5th rev. 2006). A determination of whether a "wherein" clause is a limitation in a claim depends on the specific facts of the case. *Id*. The issue in this case is whether the recited structure regarding the length and diameter differences between the proximal and distal portions of the guide wire lumen have the *effect* of substantially preventing blood from entering the proximal portion of the guide wire lumen and allowing a less viscous anticoagulant in the proximal portion in the guide wire lumen to coat the surface of the guide wire in the distal portion of the guide wire lumen, as stated in the "wherein" clause, or whether the recited structure is limited by the "wherein" clause.

The plaintiff contends that the "wherein" clause includes functional limitations on the capability of the catheter. According to the plaintiff, these functional limitations, in addition to the structural limitations of the guide wire lumen, distinguish this invention from prior art.

The defendant, on the other hand, argues that the "wherein" clause is not material to patentability and, therefore, is not limiting. In support of its argument, the defendant points to the

prosecution history where the examiner rejected claims as anticipated by prior art and characterized the "wherein" clause as "a recitation of the intended use of the claimed invention" and requested "a structural difference." Office Action, Nov. 6, 1998, at 4. In response to this rejection, the applicants amended their claims to include new structural limitations, specifically adding the requirement that the proximal portion of the guide wire tube be longer and have a larger diameter than the distal portion. Amendment, Feb. 8, 1999, at 2-4.

The Court agrees with the plaintiff that the "wherein" clause provides functional limitations. Reading the claim as a whole, the "wherein" clause describes the limitations for selecting the "first length" and the "first diameter." In addition, the prosecution history shows that the examiner requested that the applicant modify claims to recite specific structure in order to differentiate the invention from prior art. Office Action, Nov. 6, 1998, at 4. The applicants, after modifying their claims, stated that the modified structure was distinguishable over prior art because it had been sized to prevent blood from entering the proximal portion of the guide wire lumen while a less viscous anticoagulant in the proximal portion of the guide wire lumen is allowed to coat the surface of the guide wire within the distal portion of the guide wire lumen. Amendment, Feb. 8, 1999, at 4. Accordingly, the "wherein" clause states functional limitations on the structure. The Court now turns to the three disputed terms in the "wherein" clause.

      **a.**    **"being selected"**

The parties dispute whether the term includes an intent requirement as specified in the defendant's proposed construction, "the length and diameter of the distal portion of the guide wire tube are consciously selected with the intention of producing the results that follow." The plaintiff argues that an intent requirement would impermissibly limit the term. The defendant, on the other

hand, argues that "being selected" connotes an intentional act to produce certain results and that without the intent requirement, the language in the claim would be rendered superfluous.

After considering the parties' arguments, the Court concludes that one of ordinary skill in the art would understand "being selected" according to its plain and ordinary meaning. As a result, the Court declines to construe the phrase "being selected."

### b. "blood is substantially prevented from entering the proximal portion of the guide wire lumen"

The plaintiff proposes "blood from outside the catheter is substantially prevented from traveling through the distal portion of the guide wire tube into the proximal portion of the guide wire tube." The defendant proposes "to prevent nearly all of the blood from entering the proximal portion of the guide wire lumen." The are two main disputes between the parties.

The first dispute is whether blood is substantially prevented from entering the proximal portion of the guide wire lumen, regardless of how the blood entered the guide wire lumen, or if only the blood that enters through the distal portion of the guide wire lumen is substantially prevented from entering the proximal portion. The plaintiff argues that this feature of the invention refers to the decrease in the diameter of the distal portion of the guide wire lumen and, therefore, the limitation only prevents blood from the distal portion of the guide wire lumen from entering the proximal portion. '358 patent, 2:45-50. In response, the defendant argues that the claim language nor the specification limits the term based upon where the blood originally enters guide wire lumen.

The second dispute is over the use of "nearly all" in the defendant's proposed construction. The plaintiff argues that "substantially" may be understood according to its plain and ordinary meaning, and that "nearly all" would be inconsistent with the disclosed embodiment which

13

recognizes that some blood will enter the proximal portion of the guide wire lumen. The defendant, on the other hand, argues that "nearly all" is supported in the prosecution history because the applicant, in distinguishing prior art, states that the guide wire lumen was "sized to prevent blood from entering the proximal portion of the guide wire lumen . . . ." Amendment, Feb. 8, 1999, at 4. The defendant also points to the inventor's notebook, which was used to demonstrate an earlier date of invention, stating that "the tip prevents blood flowing into the guide wire lumen" while acknowledging that "a small portion of blood will enter the guide wire lumen . . . ." Declaration, Jan. 10, 2000. Finally, the defendant supports its proposed construction based on the dictionary definition and how "substantially" has been defined in previous cases. *See, e.g., LNP Engineering Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1354 (Fed. Cir. 2002) ("substantially" means "largely, but not necessarily wholly"); *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1366-69 (Fed. Cir. 2001) ("substantially" means "largely, but not wholly"); *York Products, Inc. v. Central Tractor Farm & Family Center*, 99 F.3d 1568, 1572 (Fed. Cir. 1996) ("substantially the entire" means "nearly the entire"); *Chemical Separation Technology, Inc. v. United States*, 51 Fed. Cl. 771, 790 (Fed. Cl. 2002) ("substantially" means "nearly").

The Court agrees with the defendant that the patent does not limit the term based on where the blood enters the guide wire lumen. The Court, however, agrees with the plaintiff that "substantially" can be understood according to its plain and ordinary meaning. The cases cited by the defendant in support of its proposed construction are distinguishable. In the context of the patents involved in those cases, it was necessary for the courts to define "substantially." *See LNP Engineering Plastics*, 275 F.3d at 1354 (the term "substantially completely wetted" required construction in order to specify proper composition); *Ecolab*, 264 F.3d at 1366-69 (the term

"substantially uniform" required construction in order to clarify the uniformity of the material); *York Products*, 99 F.3d at 1572-73 (the term "substantially the entire height thereof" required construction indicating how high ridges must cover a side wall). The term "substantially" as used in the '358 patent and the '057 patent does not have a technical meaning nor does it require construction beyond its plain and ordinary meaning.

      c. **"a less viscous anticoagulant is allowed to coat the surface of the guide wire within the distal portion of the guide wire lumen"**

The plaintiff proposes "an anticoagulant composition, having less resistance to flow than blood, in the proximal portion of the guide wire tube is allowed to coat the surface of the guide wire in the distal portion of the guide wire tube." The defendant contends that "is allowed to coat" is a method step requiring that a less viscous anticoagulant coat the guide wire. As to the remainder of the terms, the defendant contends that no construction is required.

The plaintiff argues that construing the term as a method claim would invalidate the claim because a single patent claim cannot mix apparatus and method elements. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). According to the plaintiff, claims are to be interpreted to preserve their validity when reasonably possible, *Whittaker Corp. by Technibilt Div. v. UNR Indus., Inc.*, 911 F.2d 709, 711 (Fed. Cir. 1990), and, therefore, the term cannot be a method claim. The plaintiff also argues that the claim language confirms that the structure of the catheter determines whether the anticoagulant in the distal portion of the guide wire lumen is able to coat the guide wire.

The defendant argues that the specification supports its construction. Specifically, it states that the "anticoagulant 'wipes' the guide wire clean." '358 patent, 6:41-42. According to the

defendant, this describes a method step that occurs when the catheter is fed onto the guide wire. The defendant also points to the prosecution history where the claim originally read "can coat" and was changed to "allowed to coat." The defendant interprets this to mean that the claim is limited to more than just the capability of being coated and must mean an actual method step of coating the surface of the guide wire with the anticoagulant. The defendant also argues that, even though it may invalidate the claim, its construction should be adopted because it is the only construction that is consistent with the intrinsic evidence.

In reply, the plaintiff argues that the discussion in the prosecution history refers to structural limitations, not to methods or actions.

The Court concludes that this phrase is not a method step. Nowhere in the claims, specification, or prosecution history is this phrase referred to as a method. The defendant does not dispute the plaintiff's definition of viscous. Accordingly, the Court adopts the plaintiff's proposed construction.

### 5. "a stiffening wire positioned within the catheter shaft"

The plaintiff proposes "an elongated thin metal structure other than the guide wire that is positioned within the catheter shaft and imparts stiffness." The defendant proposes "a solid, continuous metal that imparts stiffness to at least the proximal portion of the outer catheter body."

The plaintiff argues that one of ordinary skill in the art would understand that a "stiffening wire" means "an elongated thin metal structure." The plaintiff also argues that nothing in the patent requires that the stiffness be specific to "the proximal portion of the outer catheter." Specifically, the plaintiff points to the specification which states that the stiffness is imparted "to the catheter" and that stiffness can also be provided to the "distal portion of the catheter." '358 patent 2:37-41, 5:1-3.

16

The defendant argues that the stiffening wire must extend through the proximal portion of the catheter to be effective. According to the defendant, its proposed construction, and not the plaintiff's proposal, would meet the requirement that the stiffening provide "strength to the proximal portion of the catheter." '358 patent, 2:37-41. The defendant also argues that the stiffening wire needs to be solid metal because hollow tubes were not contemplated as part of the invention.

The Court agrees with the plaintiff that there is no need to include a limitation regarding stiffness at the proximal portion of the outer catheter body. The plaintiff, however, does not appear to dispute the defendant's proposal that the "stiffening wire" must be solid. Accordingly, the Court construes "stiffening wire" to mean "a thin and elongated solid metal structure that imparts stiffness to the catheter." The Court declines to construe the remainder of the phrase.

## V.     Conclusion

The Court adopts the constructions set forth in this opinion for the disputed terms of the '358 patent and the '057 patent. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

SIGNED this 23rd day of April, 2007.

_T. John Ward_
T. JOHN WARD
UNITED STATES DISTRICT JUDGE